## BREWER v. RUSSELL.

(Court of Appeals of District of Columbia. Submitted March 14, 1923. Decided May 7, 1923. Rehearing Denied May 24, 1923.)

No. 1578.

Patents ☞106(2)—Senior party held not entitled to make issue in interference.
In interference proceeding involving a count in issue claiming a pressed steel carline comprising a substantially vertical web, the senior party *held* not entitled to make the claim, in view of the fact that the essence of his invention lay in the inclination of the web from the vertical line.

Appeal from the Commissioner of Patents.

Interference proceeding between William A. Brewer and Thomas Nathan Russell. From a decision awarding priority of invention to Russell, the senior party, Brewer appeals. Reversed.

Edwin S. Clarkson, of Washington, D. C., for appellant.

Paul Carpenter, of Chicago, Ill., and William S. Gluck, of New York City, for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents awarding priority of invention to appellee, Russell, the senior party.

The invention relates to pressed steel carlines and is defined in the single count of the issue as follows:

"A pressed steel carline having a substantially Z-shaped cross-section and comprising a substantially vertical web extending longitudinally thereof, and an upper flange and a lower flange projecting horizontally from said web in opposite directions, said upper flange increasing in width from the middle of the carline toward the ends thereof, said lower flange decreasing in width from the middle of the carline towards the ends thereof."

A patent was inadvertently granted appellant, Brewer, while appellee's application was pending in the Patent Office. Appellee sought to have the patent claim added to his case, under rule 78 of the Rules of Practice of the Patent Office. This was refused. He then forfeited his application, filing a renewal under section 4897 of the Revised Statutes (Comp. St. § 9443). The claim under the renewal application was allowed, and the present interference was instituted. Appellant, Brewer, failed to file a statement, and was ordered to show cause why judgment on the record should not be entered against him. He thereupon moved to dissolve the interference on the ground that appellee has no right to make the claim.

The case turns, we think, as was determined by the tribunals below, upon the right of the party, Russell, to make the claim in issue. His right is contested on the ground that he does not disclose "a substantially vertical web." For convenience we will reproduce figures 3 and 4 of the Brewer patent:

It will be observed that the web *1* stands vertical and the top and bottom flanges, *2* and *3*, are horizontal. The top and bottom flanges are stiffened by marginal flanges *4* and *5*, and the top flange is also stiffened by the corrugations *7*. Most important, however, are the

vertical corrugations *6* formed in the vertical web *1*, thus increasing the vertical load-sustaining capacity. This is aptly described in the Brewer specification as follows:

"At the ridge the vertical load on the carline is greater than at the eaves. The vertical depth of the carline may be made greater at the ridge than at the eaves, to make the carline better adapted to support this varying vertical load; but the web cannot be made very deep at the ridge without being liable to buckle. In applicant's construction the vertical corrugations stiffen the web and coact with the greater depth at the ridge to make the carline strong and yet light."

Figures 4 and 5 of the Russell application are as follows:

The web *37* is designed to co-operate with the wooden beam *19a*, and from the following portion of the specification it appears that the S-shaped web performs an entirely different function from that designed by Brewer:

"The improved structure of carline described in the foregoing specification has certain marked features of advantage, among which may be noted * * * the curved web *37* which is arranged at an angle to the perpendicular, and is therefore more rigid and offers greater resistance to twisting strains than would be the case were the web vertically arranged."

Both parties seem to be providing against vertical and horizontal stresses by inherently different methods. Brewer's web is in a vertical position to resist vertical strains to a maximum extent, and at the same time provide against horizontal strains through the corrugations *6*. Russell's web is corrugated longitudinally, requiring that it be placed in an inclined position, in order to take care of both the vertical and longitudinal strains.

The departure here made from the prior art in the nature or distribution of stresses is small. It is a short step forward in a well-developed field. The vertical corrugations in the Brewer web increase the strength of the web for vertical load-sustaining purposes, while Russell sacrifices this function by using longitudinal corrugations to strengthen against buckling and torsional stresses. Indeed, the only merit in Russell's structure is through co-operation with the wooden beam shown in figures 4 and 5.

Russell, when he petitioned the Board of Examiners in Chief for a rehearing, conceded:

"That the single claim of the Brewer patent is limited to a vertical flange, and that appellant, Russell, is not able to make such Brewer claim in terms."

The reason for this admission is apparent, since the essence of his invention lies in the inclination of the web from the vertical line and the rounding thereof into corrugations that merge with the top and bottom flanges. It is not clear how Russell can claim even a "substantially vertical" web. The position of the web is so adverse to such a construction that we are compelled to hold that he cannot make the claim, and the motion to dissolve should have been sustained.

The decision of the Commissioner is reversed.